UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

———

| | |
|---|---|
| CINDY FELT, | )<br>)<br>) |
| Plaintiff, | )     Case No. 1:13-cv-1023 |
| v. | )<br>)     Honorable Phillip J. Green |
| COMMISSIONER OF<br>SOCIAL SECURITY, | )<br>)<br>) |
| | )     **OPINION** |
| Defendant. | ) |

This is a social security action brought under 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Commissioner of Social Security denying plaintiff's claim for disability insurance benefits (DIB). On August 12, 2010, plaintiff filed her application for DIB benefits. (Page ID 189-90). She alleged an May 30, 2010, onset of disability. (Page ID 189). Her claim was denied on initial review. (Page ID 130-38). On January 24, 2012, plaintiff received a hearing before an ALJ, at which she was represented by counsel. (Page ID 80-126). On March 14, 2012, the ALJ issued her decision finding that plaintiff was not disabled. (Page ID 65-75). On June 21, 2013, the Appeals Council denied review (Page ID 32-34), and the ALJ's decision became the Commissioner's final decision.

Plaintiff filed a complaint seeking judicial review of the Commissioner's decision. Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, the parties voluntarily consented to have a United States magistrate judge conduct all further proceedings in this case, including entry of final judgment. (Dkt. 15). Plaintiff asks the court to overturn the Commissioner's decision on the following grounds:

      1.      The ALJ erred by failing to consult a medical expert before determining that plaintiff's back impairment did not equal the requirements of listing 1.04.

      2.      The ALJ erred by failing "to articulate a good reason" for discounting the opinion of plaintiff's treating physician.

      3.      The ALJ erred by "improperly dismiss[ing]" plaintiff's testimony.

(Plf. Brief at 1, Dkt. 16, Page ID 658).

The Court finds that plaintiff's arguments do not provide any basis for disturbing the Commissioner's decision. A judgment will be entered affirming the Commissioner's decision.

## Standard of Review

When reviewing the grant or denial of social security benefits, this Court is to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner correctly applied the law. *See Elam ex rel. Golay v. Commissioner*, 348 F.3d 124, 125 (6th Cir. 2003); *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001). Substantial evidence is defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Heston v. Commissioner*, 245 F.3d 528, 534 (6th Cir. 2001) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *see Rogers v. Commissioner*, 486 F.3d 234, 241 (6th Cir. 2007). The scope of the court's review is limited. *Buxton*, 246 F.3d at 772. The Court does not review the evidence *de novo*, resolve conflicts in evidence, or make credibility determinations. *See Ulman v. Commissioner*, 693 F.3d 709, 713 (6th Cir. 2012); *Walters v. Commissioner*, 127 F.3d 525, 528 (6th Cir. 1997). "The findings of the [Commissioner] as to any fact if supported by substantial evidence shall be conclusive . . . ." 42 U.S.C. § 405(g); *see McClanahan v. Commissioner*, 474 F.3d 830, 833 (6th Cir. 2006). "The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. . . . This is so because

there is a 'zone of choice' within which the Commissioner can act without fear of court interference." *Buxton*, 246 F.3d at 772-73. "If supported by substantial evidence, the [Commissioner's] determination must stand regardless of whether the reviewing court would resolve the issues of fact in dispute differently." *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993); *see Gayheart v. Commissioner*, 710 F.3d 365, 374 (6th Cir. 2013)("A reviewing court will affirm the Commissioner's decision if it is based on substantial evidence, even if substantial evidence would have supported the opposite conclusion."). "[T]he Commissioner's decision cannot be overturned if substantial evidence, or even a preponderance of the evidence supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Commissioner*, 336 F.3d 469, 477 (6th Cir. 2003); *see Kyle v. Commissioner*, 609 F.3d 847, 854 (6th Cir. 2010).

## Discussion

The ALJ found that plaintiff met the disability insured requirement of the Social Security Act from May 30, 2010, through the date of the ALJ's decision. (Op. at 3, Page ID 67). Plaintiff had not engaged in substantial gainful activity on or after May 30, 2010. Plaintiff had the following severe impairments: "degenerative disc disease, obesity, and a dysthymic disorder." (*Id.*). The ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the listing of impairments. (*Id.* at 4, Page ID 68). The ALJ found that plaintiff retained the residual functional capacity (RFC) for a limited range of light work:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she can only occasionally operate bilateral foot controls. She requires a sit/stand option where she can sit for 30 minutes at a time, for a total of six hours in an eight-hour workday; and stand for 10 minutes at a time and walk for about ten minutes at a time, for a total of two hours in an eight-hour workday. The claimant would use a cane [in her non-

>dominant left hand] while walking []. She can never climb ladders, ropes, or scaffolds, but she can occasionally climb ramps and stairs. She can occasionally balance, stoop, kneel, crouch, and crawl. She must avoid concentrated exposure to hazards and vibrations. The claimant is limited to unskilled work.

(Op. at 5-6, Page ID 69-70). The ALJ found that plaintiff's testimony regarding her subjective complaints was not fully credible. (*Id.* at 6-9, Page ID 70-73). Plaintiff was unable to perform any past relevant work. (*Id.* at 9, Page ID 73). Plaintiff was 40 years old as of her alleged onset of disability and 42 years old as of the date of the ALJ's decision. Thus, plaintiff was classified as a younger individual at all times relevant to her claim for DIB benefits. (*Id.*). Plaintiff has at least a high school education and is able to communicate in English. (*Id.*). The ALJ found that the transferability of job skills was not material to the determination of disability. (*Id.*).

The ALJ then turned to the testimony of a vocational expert (VE). In response to a hypothetical question regarding a person of plaintiff's age, and with her RFC, education, and work experience, the VE testified that there were approximately 15,500 jobs in Michigan that the hypothetical person would be capable of performing. (Page ID 120-22). The ALJ found that this constituted a significant number of jobs. Using Rule 202.21 of the Medical-Vocational Guidelines as a framework, the ALJ held that plaintiff was not disabled. (Op. at 10-11, Page ID 74-75).

**1.**

Plaintiff argues that the ALJ erred by failing to consult a medical expert before determining plaintiff's back impairment did not equal listing 1.04. (Plf. Brief at 14-18, Page ID 671-75; Reply Brief at 1-5, Page ID 696-700). The ALJ found that plaintiff did not meet or medically equal the requirements of listing 1.04. (Op. at 4, Page ID 68). Plaintiff's back problem did not meet any of the severity requirements of listing 1.04. She did not provide medical evidence establishing a compromise of the nerve root or the spinal cord with evidence of nerve root compression

characterized by neuro-anatomic distribution of pain, limitation of motion in the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory reflex loss and positive straight leg raising test (sitting and supine).  (Op. at 4, Page ID 68, *see* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04(A)).  She did not present evidence establishing that she had spinal arachnoiditis.  (Op. at 4, Page ID 68;  20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04(B).  Plaintiff did not present evidence establishing that she had "lumbar stenosis resulting in pseudoclaudication."  (Op. at 4, Page ID 68; 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04(C).  Plaintiff has not challenged the ALJ's finding that she did not meet the requirements of listing 1.04, nor could she successfully do so on the present record.  All the ALJ's findings with regard to severity under parts A, B, and C of listing 1.04 are supported by more than more than substantial evidence.

      Plaintiff did not make any argument in her pre-hearing brief that she met or equaled the requirements of any listed impairment.  (Page ID 273-76).  She did not present any argument claiming that the ALJ needed to consult a medical expert before making a determination that plaintiff's back impairment did not meet or equal the requirements of listing 1.04.  (*Id.*).  The hearing transcript is likewise devoid of any argument that plaintiff suffered from any impairment approaching listing-level severity.  (Page ID 80-126).  The ALJ found that "the medical evidence [did] not document listing-level severity, and no acceptable medical source ha[d] mentioned findings equivalent in severity to the criteria of any listed impairment, individually or in combination."  (Op. at 4, Page ID 68).  Plaintiff has not shown that the ALJ's finding in this regard is not supported by substantial evidence.  Instead, plaintiff argues for the first time in this appeal that the ALJ erred by failing to consult a medical expert before determining that her back impairment did not equal listing 1.04.

Plaintiff had the burden at step 3 of the sequential analysis[1] to establish that she met or equaled the requirements of Listing 1.04. Plaintiff was required to prove "'medical findings equal in severity to *all* the criteria for the listed impairment.'" *Foster v. Halter*, 279 F.3d 348, 355 (6th Cir. 2001) (quoting *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990) (emphasis in original)). It was not the ALJ's burden. *See Lusk v. Commissioner*, 106 F. App'x 405, 411 (6th Cir. 2004) (Plaintiff "must present specific medical findings that h[er] impairment meets the applicable impairment or present medical evidence that describes how h[er] impairment is equivalent to a listed impairment."); *Shinaver v. Commissioner*, No. 1: 14-cv-727, 2015 WL 4644482, at * 2 (W.D. Mich. Aug. 4, 2015) (Plaintiff "bore the burden of providing medical evidence to support his equivalency argument.").

Even assuming that plaintiff had presented medical evidence describing how her impairment was equivalent to listing 1.04, such an opinion would have been entitled to consideration, but not any particular weight. *See* 20 C.F.R. §§ 404.1527(d)(2), (3). Whether an impairment equals a listed impairment is an administrative issue reserved to the Commissioner, not a medical determination. *See Zaph v. Commissioner*, No. 97-3496, 1998 WL 252764, at * 2 (6th Cir. May 11, 1998) ("[T]he

---

[1] "Administrative law judges employ a five-step sequential inquiry to determine whether an adult claimant is disabled within the meaning of the Social Security Act." *Warner v. Commissioner*, 375 F.3d 387, 390 (6th Cir. 2004). Under the sequential analysis, "The claimant must first show that she is not engaged in substantial gainful activity. Next, the claimant must demonstrate that she has a 'severe impairment.' A finding of 'disabled' will be made at the third step if the claimant can then demonstrate that her impairment meets the durational requirement and 'meets or equals a listed impairment.' If the impairment does not meet or equal a listed impairment, the fourth step requires the claimant to prove that she is incapable of performing work that she has done in the past. Finally, if the claimant's impairment is so severe as to preclude the performance of past work, then other factors, including age, education, past work experience, and residual functional capacity, must be considered to determine if other work can be performed. The burden shifts to the Commissioner at this fifth step to establish the claimant's ability to do other work." *White v. Commissioner*, 572 F.3d 272, 282 (6th Cir. 2009).

issue of whether an individual's impairment is equivalent to a listed impairment is an administrative finding, not a medical one."); *see also Hyde v. Commissioner*, No. 1:08-cv-1013, 2010 WL 1131956, at * 6 (W.D. Mich. Mar. 1, 2010).

The ALJ was not required to consult with a medical expert before making her finding that plaintiff did not meet or equal the requirements of a listed impairment. *See Weldon v. Commissioner*, No. 1:13-cv-402, 2014 WL 4956229, at * 5 (W.D. Mich. Oct. 2, 2014). Federal regulations allow an ALJ to call a medical expert to explain medical records but do not require her to do so. 20 C.F.R. §§ 404.1527(e)(2)(iii); *see Weldon v. Commissioner*, 2014 WL 4956229, at * 5; *O'Neill v. Colvin*, No. 1:13-cv-867, 2014 WL 3510982, at * 17-18 (N.D. Ohio July 9, 2014); *Wredt ex rel. E. E. v. Colvin*, No. 4:12-cv-77, 2014 WL 281307, at * 7 (E.D. Tenn. Jan. 23, 2014).

**2.**

Plaintiff argues that the ALJ failed to articulate good reasons for rejecting the opinions that a treating physician, Paul A. Wagner, D.O., offered in RFC questionnaire responses. (Plf. Brief at 18-21, Page ID 675-78; Reply Brief at 7-10, Page ID 702-05). The Court finds no violation of the treating physician rule.

The issue of whether the claimant is disabled within the meaning of the Social Security Act is reserved to the Commissioner. 20 C.F.R. § 404.1527(d)(1); *see Warner v. Commissioner*, 375 F.3d 387, 390 (6th Cir. 2004). A treating physician's opinion that a patient is disabled is not entitled to any special significance. *See* 20 C.F.R. §§ 404.1527(d)(1), (3); *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007); *Sims v. Commissioner*, 406 F. App'x 977, 980 n.1 (6th Cir. 2011) ("[T]he determination of disability [is] the prerogative of the Commissioner, not the treating physician.").

Likewise, "no special significance"[2] is attached to treating physician opinions regarding the credibility of the plaintiff's subjective complaints, RFC, or whether the plaintiff's impairments meet or equal the requirements of a listed impairment because they are administrative issues reserved to the Commissioner. 20 C.F.R. §§ 404.1527(d)(2), (3); *see Allen v. Commissioner*, 561 F.3d 646, 652 (6th Cir. 2009).

Generally, the medical opinions of treating physicians are given substantial, if not controlling deference. *See Johnson v. Commissioner*, 652 F.3d 646, 651 (6th Cir. 2011). "[T]he opinion of a treating physician does not receive controlling weight merely by virtue of the fact that it is from a treating physician. Rather, it is accorded controlling weight where it is 'well supported by medically acceptable clinical and laboratory diagnostic techniques' and is not 'inconsistent . . . with the other substantial evidence in the case record.'" *Massey v. Commissioner*, 409 F. App'x 917, 921 (6th Cir. 2011) (quoting *Blakley v. Commissioner*, 581 F.3d 399, 406 (6th Cir. 2009)). A treating physician's opinion is not entitled to controlling weight where it is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §§ 404.1527(c)(2); *see Gayheart v. Commissioner*, 710 F.3d 365, 376 (6th Cir. 2013) (A treating physician's medical opinion is entitled to controlling weight where "two conditions are met: (1) the opinion 'is well supported by medically acceptable clinical and laboratory diagnostic techniques'; and (2) the opinion 'is not inconsistent with the other substantial evidence in [the] case record.'" (citing 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2)). The

---

[2] "We will not give any special significance to the source of an opinion on issues reserved to the Commissioner described in paragraphs (d)(1) and (d)(2) of this section." 20 C.F.R. § 404.1527(d)(3); *see Blankenship v. Commissioner*, No. 14-2464, __ F. App'x __, 2015 WL 5040223, at * 9 (6th Cir. Aug. 26, 2015).

ALJ "is not bound by conclusory statements of doctors, particularly where they are unsupported by detailed objective criteria and documentation." *Buxton v. Halter*, 246 F.3d at 773. An opinion that is based on the claimant's reporting of her symptoms is not entitled to controlling weight. *See Young v. Secretary of Health & Human Servs.*, 925 F.2d 146, 151 (6th Cir. 1990); *see also Francis v. Commissioner*, 414 F. App'x 802, 804 (6th Cir. 2011) (A physician's statement that merely regurgitates a claimant's self-described symptoms "is not a medical opinion at all.").

Even when a treating source's medical opinion is not given controlling weight, the opinion should not necessarily be completely rejected; the weight to be given to the opinion is determined by a set of factors, including treatment relationship, supportability, consistency, specialization, and other factors. *See Titles II and XVI: Giving Controlling Weight to Treating Source Medical Opinions*, SSR 96-2p (reprinted at 1996 WL 374188 (SSA July 2, 1996)); 20 C.F.R. § 404.1527(c); *Martin v. Commissioner*, 170 F. App'x 369, 372 (6th Cir. 2006).

The Sixth Circuit has held that claimants are "entitled to receive good reasons for the weight accorded their treating sources independent of their substantive right to receive disability benefits." *Smith v. Commissioner*, 482 F.3d 873, 875-76 (6th Cir. 2007); *see Cole v. Astrue*, 661 F.3d 931, 937-38 (6th Cir. 2011); *Wilson v. Commissioner*, 378 F.3d 541, 544 (6th Cir. 2004). "[T]he procedural requirement exists, in part, for claimants to understand why the administrative bureaucracy deems them not disabled when physicians are telling them that they are." *Smith*, 482 F.3d at 876; *see Gayheart v. Commissioner*, 710 F.3d at 376.

Plaintiff alleges a May 30, 2010, onset of disability. On March 18, 2010, plaintiff appeared at Hart Family Medical Center. She wanted a treating physician, Constance Strbich, D.O., to sign short term disability papers regarding time that plaintiff had already taken off work (approximately February 12, 2010, through March 5, 2010). Dr. Strbich refused. Plaintiff's husband called and

left a voice mail stating "if Dr. Strbich won't fill out the papers the way we need them then just give them to our normal family doctor, Dr. Paul Wagner and he won't have any problem doing what we need." (Page ID 366; *see also* Page ID 363). Dr. Strbich's staff noted that "the dates she was off cannot be all inclusive, especially since she was at work and this would be fraudulent." (*Id.*). Apparently a compromise was reached and the paperwork was filled out, but it was not a blanket release for all the days in the time span. It covered only four days: February 12, 15, and March 2 and 5, 2010. (*Id.*).

On May 31, 2010, plaintiff appeared at Gerber Memorial and reported that a day earlier she fell in a boat and hurt her back. (Page ID 475-77). Plaintiff received prescriptions for Ultram and Motrin. (Page ID 471).

On June 3, 2010, plaintiff reported to Dr. Strbich that she fell on her lower back while stepping out of a boat. (Page ID 349). X-rays taken of plaintiff's lumbar spine on June 3, 2010, returned normal results. There was no evidence of spondylolisthesis or spondylolysis. (Page ID 284). X-rays of plaintiff's pelvis and right hip returned normal results. (Page ID 282-83). Dr. Strbich gave plaintiff a prescriptions for pain medication and advised plaintiff to follow-up with Physician's Assistant Christopher Ulrich. (Page ID 350). On June 4, 2010, plaintiff appeared at the Gerber Memorial emergency department with complaints of pain in her back and right hip. (Page ID 467). She received a prescription for Valium. (Page ID 468-69).

On June 7, 2010, plaintiff retained a full range of motion in her extremities with normal stability, strength, and tone. Her diagnosis remained "backache, NOS." (Page ID 346). Mr. Ulrich gave plaintiff a note allowing her to remain off work. (Page ID 342, 344). The MRI taken of plaintiff's lumbar spine on June 10, 2010, showed "mild" degenerative changes in the lower lumbar spine. There was "[n]o disc herniation or significant spinal canal stenosis." (Page ID 280-81). On

June 17, 2010, Mr. Ulrich approved plaintiff's return to work on June 21, 2010.  (Page ID 338-39). Plaintiff returned to work on June 21, 2010, but afterwards she complained of increased pain.  (Page ID 336).  Mr. Ulrich gave plaintiff a note excusing her from work from June 22, through June 23, 2010.  (Page ID 335).  On June 23, 2010, Mr. Ulrich signed plaintiff's short-term disability forms. He noted that plaintiff had seen a physical therapist and that she would be attending physical therapy three times per week.  (Page ID 332).  Physician's Assistant Ulrich's diagnosis remained a backache, NOS.  (Page ID 333).

On July 4, 2010, plaintiff sought medical attention at Gerber Memorial.  (Page ID 445).  She complained of right hip pain of uncertain etiology.  (Page ID 453).  Plaintiff received a prescription for Tramadol.  (Page ID 455-56).  On July 7, 2010, the MRI of plaintiff's right hip returned normal results.  (Page ID 279).

On July 15, 2010, Mr. Ulrich noted that plaintiff was 5' 4" tall and weighed 206 pounds, resulting in a body mass index (BMI of 35.36).  He noted that plaintiff had smoked cigarettes for 20-to-25 years, and continued to smoke one and one-half packs of cigarettes per day.  (Page ID 318). On July 22, 2010, Mr. Ulrich gave plaintiff an intramuscular injection of Toaradol in her right and left gluteus areas.  (Page ID 310-11).  On July 25, 2010, plaintiff appeared at Lakeshore Hospital's emergency department with complaints of back and right hip pain.  She received treatment and medication and was sent home.  (Page ID 297-98).  On July 26, 2010, Physician's Assistant Ulrich gave plaintiff another Toradol injection.  (Page ID 308-09).  On August 5, 2010, plaintiff appeared at the emergency department at Gerber Memorial with complaints of back pain after having participated in physical therapy earlier in the day.  She received pain medication and was sent home. (Page ID 432-38).

On August 11, 2010, Anthony Wilson, M.D., of Orthopaedic Associates of Michigan noted that plaintiff's lumbar spine x-rays showed no subluxation. (Page ID 497). Plaintiff's active and passive range of motion in her lower extremities were within normal limits. Her straight leg raising tests were negative. She displayed tenderness over the right greater trochanteric area. (Page ID 496). On August 12, 2010, plaintiff filed her application for DIB benefits.

On August 28, 2010, plaintiff appeared at the emergency department at Gerber Memorial Health Services for non-urgent pelvic and abdominal pain. Plaintiff was examined and provided with a prescription for Valium. (Page ID 421-30).

On September 1, 2010, Dr. Wilson advised plaintiff to lose weight and participate in physical therapy as ordered. He indicated that his working diagnosis at that time as low back pain, L4-5 disc bulging and L5-S1 annular tear. (Page ID 494). On October 7, 2010, Dr. Wilson performed an EMG and nerve conduction studies of plaintiff's lower extremities which returned normal results. There was "no evidence of lumbosacral radiculopathy, pelxopathy or peripheral neuropathy[.]" (Page ID 532). On October 27, 2010, plaintiff displayed normal activity and energy level and no malaise. Her judgment was appropriate. She was oriented and her memory was normal. (Page ID 567-68).

On November 11, 2010, plaintiff was examined and treated by Yousif Hamati, M.D., of Orthopaedic Associates of Muskegon. (Page ID 508). Plaintiff walked with a normal gait. She maintained an excellent range of motion in her hip joint without limitation. The neurological examination of her lower extremities was within normal limits. Dr. Hamati treated plaintiff with a greater trochanter injection. He instructed plaintiff to stop smoking, lose eight, and return in six weeks. (Page ID 508).

On December 27, 2010, Psychologist Robert Baird conducted a consultative mental status examination of plaintiff. Plaintiff reported that she had no history of psychiatric hospitalization. Baird described plaintiff as pleasant and cooperative. She appeared to be of average intelligence. Psychologist Baird offered a diagnosis of a dysthymic disorder and indicated that plaintiff's symptom severity did not compromise her capacity for employment. (Page ID 512-16).

On March 21, 2011, Paul Wagner, D.O., completed a check-the-box RFC questionnaire for plaintiff's attorney. He marked boxes on the questionnaire offering his opinion that plaintiff's RFC included extreme restrictions such as an ability to sit less than two hours in an eight-hour workday, an ability to stand and walk less than two hours in an 8-hour workday, "never" lifting 10 pounds or twisting, stooping, crouching, or climbing stairs. He indicated that plaintiff would constantly need to take unscheduled breaks, that she would be off task more than 25% of the time, and that she would be absent from work more than four days per month. (Page ID 525-28).

On April 13, 2011, plaintiff reported to Physician's Assistant Ulrich that she had gained about 30 pounds since June. She had not been exercising and was not following any specific diet. She weighed 231 pounds. She was using a cane. Plaintiff was counseled regarding diet and her need for sustained exercise for at least 30 minutes 3-4 times per week. (Page ID 559-60).

On April 27, 2011, Physician's Assistant Ulrich noted that plaintiff's weight was now up to 234 pounds. She was not following any specific diet. She reported eating more because she was bored. She continued to smoke one and one-half packs of cigarettes per day. She stated that her back pain prevented her from exercising. She again received counseling regarding weight management. (Page ID 556).

On July 23, 2011, plaintiff indicated to care providers at Gerber Memorial that she had a history of herniated discs and a torn sciatic nerve. Her MRI indicated that she did not have any herniated discs. (Page ID 607). Plaintiff received pain medications. (Page ID 610).

On August 3, 2011, Physician's Assistant Ulrich indicated that plaintiff was using a cane. She had a full range of motion, normal stability, and normal muscle strength and tone. (Page ID 545).

On October 13, 2011, plaintiff returned to Dr. Wagner at Hart Family Medical Center. Dr. Wagner attempted to discuss a possible referral to Spectrum Health. Plaintiff stated that Dr. Wagner did not "f___ ing care and left[.]" (Page ID 535-36). The ALJ gave plaintiff an opportunity to explain the circumstances surrounding her decision to "part ways" with Dr. Wagner and Hart Family Medical Center, in response to which plaintiff noted disagreement over the proper course of diagnostic testing and treatment. (Page ID 101-03).

Plaintiff made return visits to Gerber Memorial in November 2011 and received medication. (Page ID 594-602). Plaintiff testified that she sought treatment from "Dr. Ron Stanton at Fruitport Family Medical." (Page ID 101). On November 11, 2011, plaintiff was examined by Dr. Stanton. Plaintiff reported that she continued to smoke cigarettes. She was diagnosed with acute bronchitis and provided with a prescription for a Ventolin inhaler. Dr. Stanton encouraged plaintiff to start exercising and to stop smoking. (Page ID 619-24).

On March 14, 2012, the ALJ entered her decision. (Page ID 65-75). Plaintiff argues that the ALJ should have given more weight to Dr. Wagner's RFC questionnaire responses. The ALJ found that the extreme restrictions that Dr. Wagner suggested were entitled to little weight because they were not supported by the objective evidence and they were inconsistent with Dr. Wagner's own findings in his treatment notes:

-14-

> [T]he claimant's primary care physician, Paul Wagner, D.O., provided a medical source statement dated March 22, 2011. In it, he opined that the claimant could only sit and stand/walk for less than two hours each in an eight-hour workday. He opined the claimant could never lift any weight, twist, stoop, crouch or climb. He stated that the claimant was likely to be off-task 25% or more of the workday, but she was capable of moderate stress work. Finally, he opined that she [w]as likely to miss more than four days of work per month. (Ex. 13F). The opinion is not consistent with the objective medical evidence or the doctor's own, rather benign, findings. The undersigned gives it little weight.

(Op. at 8, Page ID 72).

None of the opinions expressed by Dr. Wagner regarding plaintiff's disability or RFC were entitled to controlling weight. The issues of disability and RFC are reserved to the Commissioner. *See* 20 C.F.R. § 404.1527(d); *see Allen v. Commissioner*, 561 F.3d at 652. If a treating physician "submits an opinion on an issue reserved to the Commissioner – such as whether the claimant is disabled, or unable to work, the claimant's RFC, or the application of vocational factors – his decision need only 'explain the consideration given to the treating sources opinion.' The opinion, however, 'is not entitled to any particular weight.' " *Curler v. Commissioner*, 561 F. App'x 464, 471 (6th Cir. 2014) (quoting *Johnson v. Commissioner*, 535 F. App'x 498, 505 (6th Cir. 2013) and *Turner v. Commissioner*, 381 F. App'x 488, 493 (6th Cir. 2010)). Dr. Wagner's predictions of how often plaintiff would likely miss work was conjecture, not a medical opinion. *See Murray v. Commissioner*, 1:10-v-97, 2011 WL 4346473, at * 7 (W.D. Mich. Aug. 25, 2011) (collecting cases). The underlying progress notes did not support the level of restriction Dr. Wagner suggested in his questionnaire responses.[3] The Sixth Circuit has consistently held that inconsistencies between

---

[3]ALJs are not bound by conclusory statements of treating physicians where they appear on "check-box forms" and are unsupported by explanations citing detailed objective criteria and documentation. *See Buxton v. Halter*, 246 F.3d at 773; *see also Hernandez v. Commissioner*, No. 1:14-cv-958, 2015 WL 3513863, at * 5 (W.D. Mich. June 4, 2015). "Form reports in which a doctor's obligation is only to check a box, without explanations of the doctor's medical conclusions are weak evidence at best[.]" *Smith v. Commissioner*, No. 13-cv-12759, 2015 WL 899207, at * 13 (E.D. Mich. Mar. 3, 2015); *see also Ashley v. Commissioner*, No. 1:12-cv-1287, 2014 WL 1052357,

proffered restrictions and the underlying treatment records are good reasons for discounting a treating source's opinions. *See e.g., Hill v. Commissioner*, 560 F. App'x 547, 549-50 (6th Cir. 2014); *Fry v. Commissioner*, 476 F. App'x 73, 75-76 (6th Cir. 2012). Here, the ALJ gave a more than adequate explanation of his consideration of Dr. Wagner's statements and gave good reasons why he found that the opinions expressed therein were entitled to little weight.

**3.**

Plaintiff argues that the ALJ erred by improperly discounting her testimony without offering a supported rationale.[4] (Plf. Brief at 21-23, Page ID 678-80; Reply Brief at 5-7, Page ID 700-02). Credibility determinations concerning a claimant's subjective complaints are peculiarly within the province of the ALJ. *See Gooch v. Secretary of Health & Human Servs.*, 833 F.2d 589, 592 (6th Cir. 1987). The Court does not make its own credibility determinations. *See Walters v. Commissioner*, 127 F.3d at 528. The Court's "review of a decision of the Commissioner of Social Security, made through an administrative law judge, is extremely circumscribed . . . ." *Kuhn v. Commissioner*, 124 F. App'x 943, 945 (6th Cir. 2005). The Commissioner's determination regarding the credibility of

---

at * 8 n.6 (W.D. Mich. Mar. 19, 2014) ("Courts have increasingly questioned the evidentiary value of 'multiple choice' or 'check-off' opinion forms by treating physicians[.]").

[4]The Court has disregarded the exhibits attached to plaintiff's reply brief and the related arguments. This Court must base its review of the ALJ's decision upon the administrative record presented to the ALJ. *See Jones v. Commissioner*, 336 F.3d at 478; *Casey v. Secretary of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993). The Court is not authorized to consider plaintiff's proposed additions to the record in determining whether the Commissioner's decision is supported by substantial evidence and whether the Commissioner correctly applied the law. *See Cline v. Commissioner*, 96 F.3d 146, 148 (6th Cir. 1996). Further, plaintiff has never requested remand to the Commissioner pursuant to sentence six of 42 U.S.C. § 405(g) for consideration of new evidence, much less presented a developed argument that would carry her burden to satisfy the statutory prerequisites for such a remand. *See Ferguson v. Commissioner*, 628 F.3d 269, 276 (6th Cir. 2010). The issue is waived. *See Curler v. Commissioner*, 561 F. App'x 464, 475 (6th Cir. 2014) ("She develops no argument to support a remand, and thus the request is waived.").

a claimant's subjective complaints is reviewed under the "substantial evidence" standard. This is a "highly deferential standard of review." *Ulman v. Commissioner*, 693 F.3d 709, 714 (6th Cir. 2012). "Claimants challenging the ALJ's credibility determination face an uphill battle." *Daniels v. Commissioner*, 152 F. App'x 485, 488 (6th Cir. 2005); *see Ritchie v. Commissioner*, 540 F. App'x 508, 511 (6th Cir. 2013) ("We have held that an administrative law judge's credibility findings are 'virtually unchallengeable.'"). "Upon review, [the Court must] accord to the ALJ's determinations of credibility great weight and deference particularly since the ALJ has the opportunity, which [the Court] d[oes] not, of observing a witness's demeanor while testifying." *Jones*, 336 F.3d at 476. "The ALJ's findings as to a claimant's credibility are entitled to deference, because of the ALJ's unique opportunity to observe the claimant and judge her subjective complaints." *Buxton v. Halter*, 246 F.3d at 773; *accord White v. Commissioner*, 572 F.3d 272, 287 (6th Cir. 2009); *Casey v. Secretary of Health & Human Servs.*, 987 F.2d 1230, 1234 (6th Cir. 1993).

The Sixth Circuit recognizes that meaningful appellate review requires more than a blanket assertion by an ALJ that "the claimant is not believable." *Rogers v. Commissioner*, 486 F.3d 234, 248 (6th Cir. 2007). The *Rogers* court observed that Social Security Ruling 96-7p requires that the ALJ explain her credibility determination and that the explanation "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Rogers*, 486 F.3d at 248.

Plaintiff's assertion that the ALJ found that her testimony was not credible based solely on the lack of objective evidence supporting her complaints (Plf. Brief at 22, Page ID 679) cannot withstand scrutiny. The ALJ considered the objective evidence and the "other evidence, based on the requirements of 20 CFR 404.1529 and SSRs 96-4p and 96-7p." (Op. at 6, Page ID 70). The ALJ considered the appropriate factors under 20 C.F.R. § 404.1529(c)(3). (Op. at 6-9, Page ID 70-73).

-17-

Further, the lack of objective evidence supporting plaintiff's claims of disabling functional limitations was an appropriate consideration. *See Walters v. Commissioner*, 127 F.3d 531-32; *see also Kerspilo v. Commissioner*, No. 13-cv-14476, 2015 WL 1469461, at * 17 (E.D. Mich. Mar. 19, 2015); 20 C.F.R. § 404.1529(c)(2) ("Objective medical evidence . . . is a useful indicator to assist us in making reasonable conclusions about the intensity and persistence of your symptoms and the effect those symptoms, such as pain, may have on your ability to work."); *Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements*, SSR 96-7p (SSA July 2, 1996) (reprinted at 1996 WL 374186, at * 1, 6).

The Court finds no error in the ALJ's finding regarding plaintiff's credibility. The ALJ gave an adequate explanation of her factual finding and that finding is supported by more than substantial evidence.

## Conclusion

For the reasons set forth herein, a judgment will be entered affirming the Commissioner's decision.

Dated:   September 15, 2015          /s/  Phillip J. Green
                                     United States Magistrate Judge